STATE OF NORTH CAROLINA v. ERNEST MARTIN

No. 14

(Filed 17 April 1978)

1. Criminal Law § 75.7— no custodial interrogation—statements admissible

The trial court did not err in allowing into evidence statements made by defendant where his first statements were made at a time when defendant was not in custody and his freedom to depart was not restricted, and the later statement was made after defendant was given the *Miranda* warnings.

2. Criminal Law § 73.1— search warrant and affidavit—exclusion as hearsay evidence

It is ordinarily error for the trial judge to permit a search warrant together with the affidavit attached thereto to be introduced into evidence because the statements in the affidavit are hearsay evidence which deprives an accused of his right to confrontation and cross-examination; therefore, the trial court properly denied defense counsel's motion to allow the search warrant authorizing search of defendant's premises into evidence as an exhibit of the court or in the alternative to instruct the district attorney to present the warrant as a part of the State's case.

3. Homicide § 20— shotgun shells—Clorox jug—admission not prejudicial

In a prosecution for first degree murder and armed robbery, defendant was not prejudiced by the admission into evidence of .410 gauge shells and a Clorox jug bearing the odor of kerosene which were seized from defendant's premises.

State v. Martin

4. **Bills of Discovery § 6— accomplice's statement made during trial—statement furnished defense counsel—no mistrial**

Defendant was not entitled to a mistrial where the district attorney learned, during trial, of a statement made by defendant's accomplice in the crime which implicated defendant and which differed from the accomplice's pretrial statement; as soon as the district attorney became aware of the new matter to which the witness would testify, he furnished defense counsel a copy of the additional evidence; defense counsel cross-examined the accomplice and clearly placed before the jury the differences in his pretrial statements and his in-court testimony; and defense counsel offered as witnesses the people who took the accomplice's statements.

5. **Criminal Law § 114.2— jury instructions—no expression of opinion**

In a prosecution for first degree murder and armed robbery, the trial judge did not express an opinion in violation of G.S. 1-180 during his recapitulation of the State's evidence when he stated, after summarizing the testimony of a certain witness, "There was also other corroborating evidence which I will not attempt to relate at this time," since there was in fact other testimony tending to corroborate the testimony of that witness.

6. **Homicide § 21.5; Robbery § 4.3— first degree murder—armed robbery—sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for first degree murder and armed robbery where it tended to show that defendant and an accomplice robbed an insurance collection agent at gunpoint; they forced the victim to drive to a wooded area where they shot her when she tried to run; they left her car behind an abandoned farmhouse; the victim's body had an odor of kerosene about it and it appeared that the back of her body had been burned; and a Clorox jug bearing the odor of kerosene and shotgun shells were found on defendant's premises.

APPEAL by defendant from *Cowper, J.,* 20 June 1977 Session of WAYNE Superior Court.

Defendant was charged with first degree murder and armed robbery.

The State's evidence tended to show that on 6 April 1977, Rose C. Blackwell, an insurance debit agent, left her home in Mt. Olive for the purpose of making collections. She was last seen at the residence of Mrs. Norma Carroll Vann, who lived a short distance from the home of defendant's mother. Mrs. Blackwell did not return to her office at the customary time, and the police were notified. A search was immediately instituted, and Mrs. Blackwell's body was located in the woods near an abandoned farmhouse. A rope had been tied around her neck, she had suffered gunshot wounds, there was an odor of kerosene about her

body, and it appeared that the back of her body had been burned. A jar having the odor of kerosene about it was found nearby, and a fingerprint later identified as being the right thumbprint of Don Zell Jones was lifted from this jar. An autopsy was performed upon Mrs. Blackwell's body, and the medical examiner testified that in his opinion her death was caused by multiple gunshot wounds.

Don Zell Jones, who was also charged with the murder of Mrs. Blackwell, testified for the State. He had previously entered a plea of guilty and had been sentenced to a term of life imprisonment. He stated that he was living with defendant's sister in the Martin home on 6 April 1977, and on that day, he and defendant were the only adult persons in the Martin residence when Mrs. Blackwell arrived. He and defendant knew that she was coming to collect for insurance, and they agreed that defendant would tell Mrs. Blackwell that his mother was in the back room and that she wanted to cash a check. When Mrs. Blackwell came into the back room, the witness pointed his gun toward her, and she ran to the front part of the house where defendant took about $200.00 from Mrs. Blackwell while Jones held a shotgun on her. The witness then forced Mrs. Blackwell to enter the driver's seat of her automobile. Defendant entered the back seat, and the witness sat in the front passenger seat. He ordered Mrs. Blackwell to drive to a wooded area where defendant got out of the automobile and took Mrs. Blackwell by the arm. She pulled away and started to run, and Jones shot her three times. They then left her car behind an abandoned farmhouse. As they were returning to the Martin home, they encountered four men in a pickup truck, one of whom asked where they were going. Jones later gave defendant $50.00 of the money taken from Mrs. Blackwell and kept about $150.00.

The State introduced a statement made by defendant to police officers which will be more fully discussed in the opinion. There was also other evidence concerning the search for and discovery of Mrs. Blackwell's body.

Defendant did not testify but offered police officers Goodman, Bryant, and Flowers, who testified that on 8 April 1977, Don Zell Jones made a statement to them which differed from Jones' in-court testimony in that Jones told the officers that defendant was not present when the killing occurred.

The jury returned verdicts of guilty of first degree murder in the perpetration of a felony and guilty of armed robbery. Judge Cowper imposed a sentence of life imprisonment in the murder case and continued prayer for judgment in the armed robbery case.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State.*

*Herbert B. Hulse, for defendant appellant.*

BRANCH, Justice.

[1] Defendant contends that the trial judge erred by admitting into evidence statements made by defendant before he was given the Miranda warnings.

Pursuant to the defendant's motion to suppress evidence of statements made by him to police officers, a *voir dire* hearing was held before the jury was empaneled. The State offered the testimony of S.B.I. Agent William Thompson and Officers Ronnie Thigpen and James L. Sasser which tended to show that upon receiving information that Don Zell Jones might be involved in the killing of Mrs. Blackwell they ascertained that he was residing at the home of Helen Martin. After obtaining Mrs. Martin's consent to search her home, they proceeded to the premises. Upon arrival, they encountered Ernest Martin, who told them that Don Zell Jones lived there and was his sister's boyfriend. Officer Flowers asked Ernest if he would go to the police car and talk with them. He agreed to do so and while sitting in the police car, he was asked if a lady in a red car came to his home on 6 April 1977. He replied in the negative. He was then asked if he was afraid of Don Zell Jones, and he replied that he was. The officers told him he would be protected from Jones, and defendant then stated that a woman in a red car drove up to the house on 6 April and he was asked to tell her that his mother was in the back room of the house and wanted to cash a check. He delivered the message, and the woman entered the house. Shortly thereafter, the woman ran out of the house with Don Zell Jones following her armed with a shotgun. Don Zell Jones and the woman entered her car and left. Ernest Martin was then advised that he was a witness and was requested to go to the city hall to make a

statement. He consented and they proceeded to the Mt. Olive City Hall, where Ernest made a statement similar to the one immediately above recited. The officers testified that at this point, they had not considered defendant a suspect and that he was not under arrest or restrained in any manner. However, when he had completed his statement, one of the officers inquired of him "if he had anything to do with the crime" and Ernest replied, "I went with him to ditch the car." After Ernest Martin made this reply, S.B.I. Agent Thompson immediately and fully advised Ernest Martin of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). Defendant affirmatively waived his constitutional rights including his right to presence of counsel. He then, in substance, repeated the statement above summarized and further stated that he went with Jones to hide the car and later, at Jones' request, bought some kerosene. Jones took the kerosene and rode off on a bicycle.

After the interview ended, the officers took defendant home.

Defendant offered no evidence on the *voir dire* hearing.

At the conclusion of the hearing, Judge Cowper found facts consistent with those above stated and concluded that the first statement was non-custodial and, therefore, required no *Miranda* warnings. He further concluded that the second statement was voluntarily made after defendant understandingly and voluntarily waived his constitutional rights. Judge Cowper thereupon ruled that the statements were admissible into evidence.

We are of the opinion that the court correctly ruled. In *Oregon v. Mathiason*, 429 U.S. 492, 50 L.Ed. 2d 714, 97 S.Ct. 711 (1977), a parolee voluntarily came to the police station and was advised that he was not under arrest. He was questioned about a burglary and was falsely told that his fingerprints were found at the scene of the burglary. He confessed to the burglary but then left the police station without any hindrance. At trial, his statement was admitted into evidence, and he was convicted of first degree burglary. The Oregon Court of Appeals affirmed, but upon his petition for review, the Supreme Court of Oregon reversed holding that the failure to give the *Miranda* warnings was reversible error. The State of Oregon petitioned the United States Supreme Court for review and the petition was allowed. In re-

versing the decision of the Supreme Court of Oregon, the United States Supreme Court, in part, stated:

> Our decision in Miranda set forth rules of police procedure applicable to "custodial interrogation." "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

> \*    \*    \*.

> . . . police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody."* It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited. [Emphasis ours.] 429 U.S. at 494-495.

*Accord: State v. Biggs*, 292 N.C. 328, 233 S.E. 2d 512 (1977); *State v. Sykes*, 285 N.C. 202, 203 S.E. 2d 849 (1974).

In instant case, all the evidence shows that defendant voluntarily went to the police station and at the time he made the statements he was not under arrest and his freedom to depart was not restricted. In fact, the police officers returned him to his home at the conclusion of the interview. We hold that defendant's first statement was not the product of "custodial interrogation" and, therefore, no *Miranda* warnings were required. Neither was the assurance by the officers that they would protect him from Don Zell Jones of such nature as to render the otherwise valid statement inadmissible. *See, State v. Newsome*, 195 N.C. 552, 143 S.E. 187 (1928).

Defendant's contention that the statements made after the *Miranda* warnings were given were involuntary and inadmissible is without merit. Our holding that the original statement was properly admitted destroys his argument that the statement made after the warnings were given was tainted by the original

statement. Further, Judge Cowper's findings which support his conclusions and ruling were supported by the evidence and are, therefore, binding upon us. *State v. Biggs, supra.*

Defendant's assignment of error number 5 is as follows:

> The court erred in admitting testimony of evidence seized during the search of defendant's premises with a search warrant and in refusing to permit defense counsel to introduce the search warrant into evidence on cross examination of the State's witness.

On direct examination, S.B.I. Agent Thompson testified that he went to the Martin residence with Deputy Sheriffs Sasser, Uzzle, and others where Officer Jernigan served a search warrant on defendant. Over defendant's objection, Thompson testified that there they found a number of caps from .410 gauge shells and a plastic Clorox jug which smelled of kerosene. On cross-examination, he was shown defense exhibit 2 which he identified as a copy of the search warrant which authorized a search of the Martin home. The return of the search warrant shows:

> X on the 9 day of April, 1977, at 1:20 o'clock a.m., I made a search of within described premises as therein commanded. X I did not seize any items.

[2] At this point, in the absence of the jury, defense counsel moved that the court allow the search warrant into evidence as an exhibit of the court or in the alternative instruct the district attorney to present the warrant as a part of the State's case. In his argument on these motions, defense counsel, in part, stated:

> Your Honor, I am not moving to suppress. I am using the search warrant to impeach witnesses who have testified contrary to what they've sworn to in an affidavit.

> *   *   *

> I have not moved to quash the search warrant.

Judge Cowper overruled these motions and advised defense counsel that he could, at the proper time, offer the search warrant into evidence if he so desired.

The validity of a search warrant, and the admissibility of evidence obtained by a search warrant are matters of law to be determined by the trial judge. Further, it is ordinarily error for the trial judge to permit a search warrant together with the affidavit attached thereto to be introduced into evidence, because the statements in the affidavit are hearsay evidence which deprives an accused of his right to confrontation and cross-examination. *State v. Spillars*, 280 N.C. 341, 185 S.E. 2d 881 (1972).

Defendant's reliance on *State v. McMilliam*, 243 N.C. 771, 92 S.E. 2d 202 (1956), is misplaced. *McMilliam* stands for the proposition that when the State proposes to justify a search by the possession of a valid search warrant, the search warrant must be *produced.* Obviously, the production of the search warrant is necessary so that the trial judge may determine its regularity before ruling on the admissibility of the evidence seized under the warrant. In instant case, the search warrant was produced and was before the court. In fact, it was ultimately used by defense counsel in the cross-examination of certain witnesses. Further, defendant had no *right* to control the State's presentation of its evidence. His motions relating to the admission of the search warrant ran counter to the ordinary rules of trial procedure and deviation from the normal conduct or course of the trial is a matter which rests in the sound discretion of the trial judge. *Shute v. Fisher*, 270 N.C. 247, 154 S.E. 2d 75 (1967).

[3] Defendant's contention that the admission into evidence of the caps from .410 gauge shells and the admission of the Clorox jug bearing the odor of kerosene, over his general objection, was prejudicial error merits little discussion. We do not deem it necessary to discuss the questions of whether Mrs. Martin's consent to search was still viable at the time these items were seized or whether defendant's failure to timely move to suppress waived his objections to the admission of this evidence. Suffice it to say that the evidence simply was not prejudicial to defendant. The witness Don Zell Jones without objection testified that he killed Mrs. Blackwell with a .410 gauge shotgun and that defendant at his request brought kerosene to the Martin home in a Clorox jug. Defendant's statement which was admitted into evidence corroborated this portion of Jones' testimony.

For reasons stated, this assignment of error is overruled.

[4]   By his assignment of error number 9, defendant contends that the court erred by denying his motion for a mistrial and by refusing to order the State to present for cross-examination the officers who obtained statements from the witness Jones.

Defense counsel lodged these motions at the close of the direct examination of Don Zell Jones, and Judge Cowper conducted a lengthy inquiry in the absence of the jury. At that inquiry, defense counsel pointed to the marked discrepancy between the statements made by Jones prior to the trial and his in-court testimony. The record shows that the statements taken prior to trial corroborated the statement given by defendant while the in-court testimony by Jones was much more damaging in that it placed defendant at the scene of the killing as an active participant. Defense counsel argued that the State deliberately conspired with law enforcement officers to change Jones' testimony. On the other hand, the record contains evidence tending to show that on 23 June, during the trial of the case, S.B.I. Agent Thompson, without the knowledge of the district attorney, obtained a statement from Jones which was consistent with his in-court testimony. When the district attorney was informed of this additional evidence, a copy of the statement obtained by Agent Thompson was promptly furnished to defense counsel. The prosecution had not previously known that Jones would so testify and, in fact, had not planned to use him as a witness. At the time Jones gave the last statement to Agent Thompson, he had already pled guilty to murder in the first degree and had received a sentence of life imprisonment.

At the conclusion of the inquiry, Judge Cowper denied defendant's motion for a mistrial and also denied his motion to order the State to submit the police officers as State's witnesses for cross-examination by defense counsel. However, Judge Cowper stated that he would permit defense counsel to examine these witnesses as hostile witnesses if he desired to offer them.

Whether a motion for mistrial shall be granted in criminal cases less than capital ordinarily rests in the sound discretion of the trial judge, and his ruling (without findings of fact) will not be disturbed absent a showing of gross abuse. *State v. Daye*, 281 N.C. 592, 189 S.E. 2d 481 (1972).

In *Brady v. Maryland*, 373 U.S. 83, 87, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963), it is stated:

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

Further, G.S. 15A-907 provides that when a party subject to compliance with an order of discovery "discovers prior to or during trial additional evidence or decides to use additional evidence . . . he must promptly notify the attorney or the other party of the existence of the additional evidence or the name of each additional witness."

In instant case, the record discloses that as soon as the district attorney became aware of the new matter to which the witness Jones would testify, he furnished defense counsel a copy of the additional evidence. These facts do not disclose prosecutorial misconduct. To the contrary, it appears that the conduct of the district attorney was within constitutional bounds and complied with the statutory mandate. Further, when defense counsel commenced his cross-examination of the witness Jones, he had been fully informed of all prior statements made by Jones. At that time, defense counsel conducted a knowledgeable and searching cross-examination which clearly placed before the jury the differences in Jones' pretrial statements and his in-court testimony. Defense counsel also had the opportunity to offer the witnesses who took Jones' statements. This he did. Under these circumstances, we are unable to say that Judge Cowper abused his discretion in denying defendant's motion for a mistrial or committed prejudicial error in denying his motion that the court order the State to present witnesses for cross-examination by defendant.

[5] Defendant contends that the trial judge expressed an opinion in violation of G.S. 1-180 during his recapitulation of the State's evidence.

After summarizing the testimony of the witness Jones, Judge Cowper stated, "There was also other corroborating evidence which I will not attempt to relate at this time." Defendant points

to this statement as an erroneous expression of opinion. Immediately following the challenged statement, the court instructed the jury:

> It is your duty to remember and consider all the evidence whether I call it to your attention or not and if I have neglected to state the evidence properly or if counsel neglected to state the evidence properly it's your duty to remember and consider all the evidence and use your own recollection and disregard anyone else's recollection.

"Slight inadvertencies in recapitulating the evidence or stating contentions must be called to the attention of the court in time for correction. Objection after verdict comes too late." *State v. Goines*, 273 N.C. 509, 514, 160 S.E. 2d 469, 472 (1968).

Defendant failed to call this alleged misstatement to the court's attention before verdict. Even had he done so, the record discloses that there was in fact other testimony tending to corroborate the testimony of the witness Jones, e.g., the testimony of John William Wilkins, II, corroborated Jones' testimony that he and defendant encountered two white men in a pickup truck as they were leaving the scene of the crime; the testimony of the persons who discovered Mrs. Blackwell's body tended to corroborate defendant's testimony as to how and where the killing took place. Under these circumstances, we find no expression of opinion on the part of the trial judge which violated the provisions of G.S. 1-180.

[6] Defendant assigns as error the court's denial of his motion for judgment as of nonsuit.

Upon a defendant's motion for judgment as of nonsuit in a criminal case, the evidence must be considered in the light most favorable to the State and the State must be given the benefit of every reasonable inference deducible therefrom. When so considered, the motion for judgment as of nonsuit should be denied if there is substantial evidence of each element of the charged offense and when there is like evidence that defendant committed the offense. *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971), *cert. denied*, 414 U.S. 874 (1973).

The State offered substantial evidence of every element of the crimes of murder in the first degree and armed robbery. There was also ample evidence of like quality presented which tended to show that defendant was one of the perpetrators of each of these crimes. Therefore, the trial judge correctly denied defendant's motion for judgment as of nonsuit.

The remaining assignments of error are formal and do not require discussion.

Defendant has failed to show prejudicial error in the trial of this case, and the verdict and judgment entered below will not be disturbed. Nevertheless, in view of this youthful defendant's cooperation with the police and the facts which suggest that the witness Don Zell Jones was the moving force in the planning and execution of these crimes, this may well be a case warranting early review by the executive branch of our government.

No error.