STATE OF NORTH CAROLINA v. CURTIS EUGENE SMITH

No. 521A84

(Filed 3 June 1986)

1. Infants § 17— juvenile defendant in custody at time of confession

The evidence showed that a reasonable person in the sixteen-year-old defendant's position would not have believed that he was free to go or that his freedom of action was not being deprived in a significant way so that defendant was "in custody" when he confessed where it tended to show that two police officers went to defendant's house after they learned that defendant had been implicated in a robbery and assault; defendant was informed that he was a suspect in the crimes and was asked to accompany the officers to the local police station; an officer stayed with defendant while he got dressed, and defendant was driven to the police station in the back seat of an official police vehicle; defendant was read his juvenile rights on the way to the station and upon arrival at the station; when defendant requested the presence of his mother, one officer was sent to locate her while defendant waited in the same room at the police station; while waiting, defendant was confronted by the police chief and a police sergeant who explained that another participant in the crimes had implicated defendant and that the police had enough to charge defendant whether or not he made a statement; and at no time was defendant told that he was free to leave.

2. Infants § 17— interrogation of juvenile—invocation of right to have parent present—resumption of questioning by police—confession inadmissible

A juvenile's confession was inadmissible where it resulted from the "functional equivalent" of custodial interrogation initiated by the police in the

absence of a parent after the juvenile had invoked his right under N.C.G.S. § 7A-395(a)(3) to have a parent present during questioning.

Justice MARTIN dissenting.

APPEAL by defendant pursuant to N.C.R. App. P. 4(d) and N.C.G.S. § 15A-979(b) from a judgment imposing life imprisonment, entered by *Owens, J.,* at the 24 May 1984 Criminal Session of Superior Court, GASTON County. Judgment entered upon a plea of guilty to a charge of murder in the first degree following the denial of a motion to suppress evidence. Heard in the Supreme Court 17 October 1985.

*Lacy H. Thornburg, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

Defendant seeks a new trial because of an alleged error committed by the trial court. Defendant, a juvenile, contends that the trial court erred in denying his motion to suppress his confession because it was obtained in violation of his right to be free from compelled self-incrimination, to have counsel present, and to have his mother present. Having carefully reviewed the record and the relevant law, we conclude that defendant's confession was obtained in violation of his juvenile rights as set forth in N.C.G.S. § 7A-595, and that the motion to suppress was improperly denied. Defendant is entitled to a new trial.

Defendant was charged with murder in the first degree.[1] Evidence for the State tended to show that on 29 November 1983, between the hours of 8:00 and 9:00 a.m., Paschal Oil Company in Mount Holly was robbed and Marvin Hunt, an employee, was severely beaten. Hunt died as a result of the inflicted injuries. Judson Lee Ross was identified as a suspect by witnesses near the scene of the crime. Upon police questioning, Ross stated that he and defendant planned and executed the robbery and assault at the oil company.

---

1. A charge of armed robbery against defendant was dismissed pursuant to a plea bargain agreement.

State v. Smith

As a result of Ross' statement, two police officers picked up defendant from his home around 10:48 a.m. and took him to the Mount Holly Police Station for questioning. An officer read defendant his juvenile rights on the way to the station. *See* N.C.G.S. § 7A-595 (1981). At the police station, defendant was taken to the police chief's office and read his juvenile rights in the presence of Officer Moore. Pursuant to those rights, defendant requested the presence of his mother during questioning. At that point, the interview ceased and Officer Cook went to locate defendant's mother. This occurred at approximately 11:20 a.m. Defendant told Officer Cook that his mother had gone to the Gaston County Jail in Gastonia to take care of an unrelated matter. Officer Cook called the jail twice and learned that defendant's mother had not yet arrived. He decided to drive to Gastonia to locate defendant's mother and to secure a search warrant for defendant's home.

Meanwhile, around 12:55 p.m., defendant's mother returned home. She was told by officers at her home that defendant was at the Mount Holly Police Station. Officer Cook arrived at the house ten or fifteen minutes later. The evidence is conflicting as to whether Officer Cook told defendant's mother that defendant had asked to see her.

Sometime between 11:52 a.m. and 12:15 p.m., while Officer Cook was attempting to locate defendant's mother, Officer Moore returned to the room where defendant was waiting. He told defendant that he wanted to explain some things to him and asked defendant not to say anything. Around 12:15 p.m., shortly after Officer Moore began talking to defendant, Chief Huffstetler, Mount Holly Police Department, entered the room. Officer Moore introduced defendant and told Chief Huffstetler that defendant had been advised of his rights and had requested the presence of his mother during the questioning. According to Officer Moore's testimony, Chief Huffstetler talked briefly with defendant and asked defendant if he wanted to "straighten" it out, apparently referring to the assault and robbery at the oil company. Officer Moore left the room but returned shortly thereafter. Upon his return, Officer Moore informed defendant that the crimes being investigated, robbery and assault, were quite serious; that if the victim died it could be murder; that Judson Ross had implicated him in the crimes; that Ross would be a witness against him if the case went to trial; that he wanted him to tell the truth; and that a

confession could be considered as a mitigating circumstance by the trial judge.

At 12:30 p.m., defendant told the officers that he wanted to make a statement but did not want his mother present. Defendant was advised of his rights, stated that he understood them, and signed the waiver of rights form. Mrs. Nan Oates, a bookkeeper for the City of Mount Holly, witnessed these acts. After signing the waiver, defendant confessed to having committed the charged offenses. He stated that he entered the side door of the building while Ross waited at the front. He hit Marvin Hunt with a stick "in the back of the head" and when Hunt tried to "get a hold of [defendant]," he "swung the stick at him some more." Defendant didn't know whether he hit Hunt again during this struggle. Defendant opened the front door for Ross. They took money from the cash register and left separately.

Defendant's motion to suppress his confession was denied 24 May 1984. On 29 May 1984, defendant, pursuant to a plea bargain agreement, entered a plea of guilty to murder in the first degree. On 14 June 1984, following a sentencing hearing, a jury, after finding no aggravating circumstances, unanimously recommended that defendant be sentenced to life imprisonment. N.C.G.S. § 15A-979(b) permits a defendant whose motion to suppress is denied to plead guilty and appeal the ruling of the judge on the motion. If the appellate court sustains the trial court's ruling on the motion, the conviction stands; if the ruling on the motion is overturned, the defendant is entitled to a new trial wherein the evidence will be suppressed. *See* Official Commentary, N.C.G.S. § 15A-979 (1983).

As grounds for suppression of his incriminating statement, defendant contends that it was obtained in violation of his fifth amendment right against compulsory self-incrimination, his sixth amendment right to counsel, and his right to have a parent present during police questioning in accordance with N.C.G.S. § 7A-595(a)(3). We find it unnecessary to address defendant's arguments which rely on the United States Constitution, since this case is fully resolvable under our own statute, N.C.G.S. § 7A-595.

In determining whether there was a violation of defendant's rights under N.C.G.S. § 7A-595(a), we must first determine whether defendant was in custody when his confession was obtained.

The trial judge concluded that it was unnecessary to determine whether defendant was in custody at the time he confessed since he had earlier concluded that none of defendant's rights under the state or federal constitutions had been violated in obtaining his confession. Nevertheless, the juvenile's rights under N.C.G.S. § 7A-595 arise, under the specific language of the statute, only if the juvenile is in custody. Accordingly, it is necessary to determine whether defendant was in custody within the meaning of N.C.G.S. § 7A-595 at the time his confession was obtained.

The standard objective test for "custody" is whether "a reasonable person in the suspect's position would believe himself to be in custody or that his freedom of action was deprived in some significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494, 50 L.Ed. 2d 714, 718 (1977); *see also Berkemer v. McCarty*, 468 U.S. 420, 82 L.Ed. 2d 317 (1984); *State v. Braswell*, 312 N.C. 553, 324 S.E. 2d 241 (1985); *State v. Jackson*, 308 N.C. 549, 304 S.E. 2d 134 (1983); *State v. Perry*, 298 N.C. 502, 259 S.E. 2d 496 (1979). This Court, in *Perry*, looked to events occurring prior to, during, and after the investigative interview to determine whether there was "custody." The operative question is whether a reasonable individual would have believed under the circumstances that he was free to leave. *State v. Perry*, 298 N.C. 502, 259 S.E. 2d 496.

[1] The evidence in the instant case shows that defendant was "in custody" when he gave his confession. Two police officers went to defendant's house after they learned that defendant had been implicated in the robbery and assault at Paschal Oil Company. Defendant was informed that he was a suspect in the crimes and was asked to accompany the officers to the local police station "to talk about it." Defendant agreed to do so and asked if he could get dressed. Officer Cook answered in the affirmative and stayed with defendant while he dressed "from the skin out." Defendant was driven to the police station in the back seat of an official police vehicle. The doors of the car could only be opened from the outside. On the way to the station, defendant was read his juvenile rights. Upon arrival at the station, defendant was escorted to a room and again read his rights in the presence of Officer Moore. When defendant requested the presence of his mother, one officer was sent to locate her while the defendant waited in the same room at the police station. While waiting, defendant, a sixteen year old youth, was confronted by the police

State v. Smith

chief and a police sergeant, both of whom were much larger than defendant. These officers "explained," among other things, that Judson Ross had implicated defendant and would be a witness against him at trial, and that the police had enough to charge him and would charge him whether he made a statement or not. At no time was defendant told that he was free to leave. In fact, the constant presence of law enforcement officers with firearms would suggest the contrary to a person of defendant's age and experience.

Under these circumstances, we cannot say that a reasonable person in defendant's position would have believed that he was free to go or that his freedom of action was not being deprived in a significant way. Therefore, we conclude that defendant was "in custody" at the time his confession was obtained.

The State contends that the facts of this case are so similar to the facts in *Oregon v. Mathiason*, 429 U.S. 492, 50 L.Ed. 2d 714, and *State v. Jackson*, 308 N.C. 549, 304 S.E. 2d 134, that those cases should control the decision here. In each of those cases, it was determined that the defendant was not in custody. However, we note that the defendant in each of those cases was an adult. We also note that in *Jackson*, the defendant was told that he was free to leave at any time, while in *Mathiason*, the defendant was not placed under arrest but was released immediately after his confession. Therefore, we do not find these cases controlling.

The State asks this Court to reconsider that portion of its opinion in *State v. Fincher*, 309 N.C. 1, 305 S.E. 2d 605 (1983), which held that any person who has not reached his eighteenth birthday, with a few exceptions not here applicable, is a juvenile within the meaning of N.C.G.S. § 7A-595. Specifically, the State asks that we hold that N.C.G.S. § 7A-595 does not apply to a person who has reached his sixteenth birthday. Believing that our decision on this question was correct and that any change therein is for legislative consideration, we decline to make the distinction requested by the State.

[2]   Since defendant was a juvenile in custody, N.C.G.S. § 7A-595 required that he be advised prior to questioning that he had a right to remain silent; that any statement he made could and might be used against him; that he had a right to have a parent, guardian or custodian present during questioning; and that he had

a right to consult with an attorney, and that one would be appointed for him if he was not represented and wanted representation. Here defendant was advised of his rights in accordance with the statute and exercised his right under subsection (a)(3) by requesting the presence of his mother, "if that would be all right." N.C.G.S. § 7A-595(c) provides that if the juvenile indicates "in any manner and at any stage of questioning pursuant to this section that he does not wish to be questioned further, the officer shall cease questioning." The statute makes no provision regarding a resumption of interrogation once the officer has ceased questioning the juvenile pursuant to the juvenile's exercise of his right to remain silent or to consult with an attorney or to have a parent present during questioning.

In resolving this issue, we find that while cases decided under the fifth and sixth amendments to the United States Constitution are not controlling, the principles established therein apply with equal force to the resumption of custodial interrogation under N.C.G.S. § 7A-595.[2] In *Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L.Ed. 2d 378, 386 (1981), the United States Supreme Court held that "an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Whether using a fifth or sixth amendment analysis, advice of rights and written waivers "are insufficient to justify police-initiated interrogations after the request for counsel." *Michigan v. Jackson*, --- U.S. ---, ---, 89 L.Ed. 2d 631, 642 (1986). We hold that the juvenile's right, pursuant to N.C.G.S. § 7A-595(a)(3), to have a parent present during custodial interrogation, is entitled to similar protection. Interrogation refers to "not only express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response

---

2. For similar treatment in other states, *see e.g., People v. Burton*, 6 Cal. 3d 375, 491 P. 2d 793 (1971) (a minor's request to see his parents, made during custodial interrogation, constituted an invocation of the minor's fifth amendment rights); *People v. Castro*, 118 Misc. 2d 868, 462 N.Y.S. 2d 369 (1983) (juvenile suspect's attempts to contact parents should have been interpreted as request to consult parent which was equivalent of request to consult attorney, invoking fifth amendment privilege).

from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 64 L.Ed. 2d 297, 308 (1980). The latter definition is often referred to as the "functional equivalent" of questioning. *See Rhode Island v. Innis*, 446 U.S. 291, 64 L.Ed. 2d 297.

In the case *sub judice*, defendant, after being advised of his statutory right to have a parent present during police questioning, requested that his mother be brought to the station. At this point, the police were obliged to cease all questioning until the mother was made available or defendant initiated further conversation with the police. Officer Moore testified that the interview ceased for approximately fifteen to twenty minutes. Then Officer Moore returned to the room where defendant was waiting and told defendant that he wanted to explain some things to him about Judson Ross' statement and asked defendant not to say anything. A few minutes after this conversation began, Chief Huffstetler entered the room. Officer Moore told Chief Huffstetler that defendant had been advised of his juvenile rights and had requested that his mother be brought to the police station, and that another officer was trying to locate her. Chief Huffstetler talked to defendant and asked him if he wanted to "straighten" it out. Officer Moore left the room but returned shortly thereafter and continued to talk to defendant. Officer Moore said: " '[defendant], you do what you want to; and certainly I don't want you to make any remarks until your mother gets here.' . . . I said, 'just listen to me;' and I said, 'I want you to know these facts of the case. I want you to know the circumstances that surround what we're hoping to interview you about.' " Officer Moore testified that he assured defendant that he was not expecting a response to his statement. Officer Moore proceeded to tell defendant that Judson Ross had confessed to being involved in the assault and armed robbery and had informed police that defendant was primarily responsible for injuries inflicted on Marvin Hunt. He further informed defendant that Judson Ross would be a witness against defendant if defendant went to trial; that the crimes being investigated were serious offenses and defendant could possibly face a murder charge; and that in his opinion the trial court could consider a confession as a mitigating circumstance.

While the evidence shows that there were few express questions asked defendant by the police, we find that defendant was subjected to the "functional equivalent" of questioning. Given the

fact that much of the conversation centered around defendant's participation in the crimes and the serious nature of the crimes, the police should have known that defendant was likely to respond in some way. Under the circumstances the officers' statements were particularly evocative. *Cf. Rhode Island v. Innis*, 446 U.S. 291, 64 L.Ed. 2d 297. Taken together, they clearly establish that defendant was subjected by the police to words that the police should have known were reasonably likely to elicit an incriminating response from him. *Id.* Since the juvenile's confession resulted from police-initiated custodial interrogation in the absence of counsel or a parent after the juvenile invoked his right to have a parent present during questioning, the confession was erroneously admitted.[3] N.C.G.S. § 7A-595. Accordingly, defendant is entitled to a new trial wherein his confession must be suppressed. N.C.G.S. § 15A-979(b).

New trial.

Justice MARTIN dissenting.

The record on appeal discloses that defendant was born on 16 December 1966. On the date of the murder, 30 July 1983, he was 16 years and 7½ months old. It is to be remembered that defendant was charged with and pleaded guilty to murder in the first degree. The majority grants defendant a new trial for the reason that defendant's mother was not present when he confessed to the murder, holding that this violated defendant's rights under N.C.G.S. § 7A-595(a)(3).

For the reasons set out in my concurring opinion in *State v. Fincher*, 309 N.C. 1, 23, 305 S.E. 2d 685, 699 (1983), I dissent from the holding that N.C.G.S. § 7A-595(a)(3) (1981) is applicable to defendant Smith. This statute applies only to juvenile delinquency proceedings.

In effect, the majority seeks to engraft an additional requirement upon officers before interrogating persons under the age of eighteen, who are being investigated on charges of murder in the first degree, by requiring that they be advised that they have a

---

3. For a similar result under more egregious circumstances, *see State v. Hunt*, 64 N.C. App. 81, 306 S.E. 2d 846 (1983).

right to have a parent or guardian present during questioning. This result is reached by reasoning that the statute defines a juvenile as one who has not reached his eighteenth birthday; defendant is only 16½ years old, so he is entitled to the benefit of the statute. N.C.G.S. § 7A-595(a)(3) simply does not apply to investigations of murder charges where the defendant is more than sixteen years old.

Additionally, in this case defendant expressly waived in writing the presence of his mother during his questioning:

BEFORE YOU ARE ASKED ANY QUESTIONS, IT IS REQUIRED THAT YOU BE ADVISED OF YOUR CONSTITUTIONAL RIGHTS.

1. You have the right to remain silent. [s/ yes]

2. Anything you say can be and may be used against you. [s/ yes]

3. You have the right to have a parent, guardian, or custodian present during questioning. [s/ yes]

4. You have a right to talk with a lawyer for advice before questioning and to have that lawyer with you during questioning. If you do not have a lawyer and want one, a lawyer will be appointed for you. [s/ yes]

5. If you consent to answer questions now, without a lawyer, parent, or guardian present, you still will have the right to stop answering at any time. [s/ yes]

WAIVER OF RIGHTS

I have read this statement of my Constitutional Rights and I intelligently understand what my rights are. I am willing to make a statement and answer questions. I do not want an attorney at this time. I do not want a parent, guardian, or custodian present during questioning. I understand and know what I am doing. No promise or threats have been made to me and no pressure or coercion of any kind has been used against me.

SIGNED: Curtis Eugene Smith

The majority does not address the voluntariness of defendant's waiver, nor shall I. However, consideration of defendant's waiver

is necessary under the majority's theory of the law in order to determine whether the perceived violation of the statute was harmless error. N.C.G.S. § 15A-1443(a) (1983).

For these reasons, I dissent.