STATE v. JOHN MITCHELL, W. T. LEE, STANLEY WINBORNE AND
GEORGE P. PELL.

(Filed 30 March, 1932.)

1. **Indictment A a—Person must answer to charge of crime only upon indictment presentment, or impeachment.**

    Under the Constitution, Declaration of Rights, section 12, no person is required to answer a criminal charge but by indictment, presentment or impeachment, and an indictment implies an indictment by grand jury as defined by common law unless changed by statute.

2. **Indictment A b—Ordinarily must be found by grand jury of county wherein offense was committed.**

Ordinarily indictment charging a criminal offense must be passed upon by the grand jury of the county wherein the offense charged was committed, and our statutes prescribing certain instances in which the grand jury of another county may pass upon an indictment will not be enlarged beyond the reasonable scope of their provisions. N. C. Code, 1931, secs. 4600, 4606.

3. **Statutes B a—General rules for construction of statutes.**

In construing a statute when there is substantial ground for doubt whether its terms were meant to apply to particular facts, the intention of the Legislature may generally be determined from a consideration of the purposes for which the act was passed, and also in proper instances, statutes are to be construed with reference to the common law in existence at the time of their enactment.

4. **Abatement and Revival A c—Where plea in abatement to jurisdiction of court is sustained the case should be dismissed.**

A plea in abatement on the ground that the grand jury was without authority to pass upon the bill of indictment because the offense charged was committed in another county challenges the jurisdiction of the court and where the plea is sustained the action should be dismissed, and where after sustaining the plea the court transfers the cause to the county in which the crime was alleged to have been committed, the latter court is without power to proceed further, and the defendant's plea in abatement therein made is properly sustained.

5. **Indictment A b—Only grand jury of Wake County may find indictment for misfeasance of public duties performed in Raleigh.**

The duties of the North Carolina Corporation Commission as a court of record and the duties of the Chief Bank Examiner appointed by it are performed in Raleigh, Wake County, N. C. Code, 1931, sec. 1023, C. S., 249, and an indictment charging the individual members of the Commission and the Chief Bank Examiner with malfeasance, nonfeasance or misfeasance in the performance of their duties relating to State banks should be laid by indictment to be passed upon by the grand jury of Wake County, and where the indictment is passed upon by the grand jury in another county the defendants' plea in abatement is properly sustained, and the case should be dismissed.

6. **Common Law A a—Common law prevailing before adoption of the Constitution is in force in this State unless modified by statute.**

The common law prevailing before the adoption of our Constitution and which was not destructive of, repugnant to, or inconsistent with the freedom and independence of the State and which has not become obsolete is in full force in this State, C. S., 970, unless it has been repealed, abrogated, or modified by statute, but those parts of the common law which are embedded in our Constitution are not subject to repeal or modification by statute.

APPEAL by State from *Small, J.,* at December Term, 1931, of WAKE. Affirmed.

On 15 December, 1931, a grand jury in Buncombe County found and returned into the Superior Court a bill of indictment charging the defendants in three counts with certain violations of the criminal law.

In the first count it is charged that John Mitchell, Chief State Bank Examiner, holding office under appointment by the Corporation Commission, and the other defendants, acting members of the Corporation Commission, charged with the special duty of prohibiting banks and banking institutions in the State from continuing to do business and receive deposits of money while they were in an unsafe and unsound condition, unlawfully and wilfully failed, neglected, and refused, and wilfully conspired together to fail, neglect, and refuse to perform their duty, and conspired to permit and allow banks and banking institutions in the State to remain open for receiving deposits of money and transacting business, knowing that such banks and banking institutions were unsafe, unsound, and insolvent.

In the second count it is charged that the defendants, while occupying the respective offices named in the first count, and while charged with the duty of requiring banks and banking institutions to comply with the laws of the State, with particular reference to carrying on and continuing their business in a safe, sound, and solvent condition and requiring such as were unsafe, unsound, or insolvent to suspend business or to place themselves in a safe, sound, and solvent condition, wilfully and fraudulently permitted and allowed the Central Bank and Trust Company, a banking institution with its principal place of business in Asheville to remain open for the purpose of receiving deposits of money from the general public and transacting other business, while it was in an unsafe, unsound, and insolvent condition, and permitted, allowed, and encouraged such bank to receive deposits of money while insolvent, to the great loss of depositors.

In substantially similar terms the third count charges the defendants with wilfully and fraudulently permitting and allowing the Biltmore-Oteen Bank, a banking institution at Biltmore, to remain open for the purpose of receiving deposits and transacting business while it was insolvent, and permitted, allowed, and encouraged it to receive deposits of money when it was insolvent.

The defendants filed a plea in abatement, each averring for himself "that he ought not to be compelled to answer the said indictment because he says that Buncombe County is not the proper venue for the prosecution and trial of the offense or offenses charged in the said bill of indictment, because if the offense or offenses charged in the bill of indictment were committed, the same were committed in the county of Wake, in that the said bill of indictment charges the said defendants and each

of them with neglect of official duties, and with misfeasance, malfeasance and nonfeasance in the performance of official duties, and in that the seat of office and place fixed by statute for the performance of official duties, on the part of the defendants who are members of the Corporation Commission of North Carolina, is and was at all times referred to in said indictment at Raleigh, in the said county of Wake, and any acts of omission or commission, if any, on the part of the said defendants in the performance of their official duties, as charged in said bill of indictment, were performed and committed in the said county of Wake, and not elsewhere; and in that the said other named defendant, to wit: John Mitchell, Chief State Bank Examiner, at the times referred to in the indictment had his office and place of business and headquarters for the performance of his official duties at Raleigh, in said county of Wake, in accordance with the condition of his appointment to such position, and such acts of omission or commission, if any, on the part of said defendant with respect to the matters charged in said bill of indictment, were performed and committed in the said county of Wake, and not elsewhere."

At November Term, 1931, of the Superior Court of Buncombe County, his Honor, Cameron F. MacRae, special judge, presiding, the plea in abatement was sustained, the action was transferred to the Superior Court of Wake County, and the defendants were required to appear at an ensuing term in Wake County, and answer the charges preferred in the indictment.

On 18 December, 1931, the defendants filed the following motion in the Superior Court of Wake County: "The defendants respectfully show to the court that it appears from the original records in this action certified to this Court from the Superior Court of Buncombe County, that a plea in abatement to the indictment found in the Superior Court of Buncombe County, was filed in that court on the ground that the supposed offenses charged in said bill of indictment, if committed at all, were committed in Wake County, and that the grand jury of Buncombe County was without jurisdiction in the premises, and that the defendants prayed that the indictment be abated. The defendants further show to the court that it appears from the order entered in the Superior Court of Buncombe County upon the hearing of said plea in abatement that the court found 'that if the defendants are guilty of the acts charged in the bill of indictment, the acts were committed in Wake County and not in Buncombe County. It is, therefore, ordered and adjudged by the court that the plea in abatement be and the same is sustained.' The defendants, therefore, respectfully show and represent to this honorable court and aver that the force and effect of the action of the judge of the

Superior Court of Buncombe County in sustaining the plea in abatement filed in that court to the indictment there found, was to render null and void said indictment, and the defendants pray and move this honorable court to so hold and adjudge." ·

On the day this motion was made the defendants filed a demurrer to the indictment on the ground that the allegations and counts therein charge no crime or misdemeanor indictable under the laws of this State.

At the December Term, 1931, of Wake County, Judge Small gave judgment that the indictment found in Buncombe County abate and be declared null and void, and that the demurrer be sustained and the defendants discharged.

The State excepted and appealed.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*Biggs & Broughton for defendants.*

ADAMS, J. The Corporation Commission is a statutory court of record with all the powers of a court of general jurisdiction as to all subjects embraced in the chapter under which it is constituted. It consists of three commissioners elected by the qualified voters of the State. Its regular sessions are held in the city of Raleigh and it is open at all times for the transaction of business. It has general control of specified corporations; it constitutes the board of State tax commissioners; and at the time set out in the indictment it had the supervision of such banking institutions as were subject to the laws of the State, with authority to make rules for the government of such institutions and to appoint a bank examiner to investigate their affairs. The business of the commission is transacted at the capital of the State, excepting such business as may be done in special sessions elsewhere held "when in the judgment of the commission the convenience of all parties is best subserved and expense is thereby saved." North Carolina Code, 1931, sec. 1023 *et seq.; C. S., 249 et seq.* At the hearing in Buncombe County the court adjudged that the acts for which the defendants were indicted related to their official duties, and found as a fact that these acts were done in Wake County and not in Buncombe. It was to this situation that the plea in abatement was primarily addressed. The plea raises the question whether a grand jury in Buncombe County had jurisdiction or power to indict the defendants for alleged misfeasance, malfeasance, or nonfeasance in the county of Wake.

The Declaration of Rights, sec. 12, declares, "No person shall be put to answer any criminal charge  .  .  .  but by indictment, presentment or impeachment"; and the word "indictment" has been construed to

mean indictment by a grand jury as defined by the common law. *S. v. Barker,* 107 N. C., 913. What, then, was the territorial jurisdiction of a grand jury under the law of England?

With respect to the question presented the common-law doctrine was clearly defined. "The grand jury," said Blackstone, "are sworn to inquire only for the body of the county, *pro corpore comitatus;* and therefore they cannot regularly inquire of a fact done out of that county for which they are sworn, unless particularly enabled by an act of parliament." 4 Com., 303. No less direct is Hawkins's Pleas of the Crown: "But of whatsoever nature an offense indicted may be, whether local or transitory, as seditions, words, or battery, etc., it seems to be agreed, that if upon not guilty pleaded it shall appear, that it was committed in a county different from that in which the indictment was found, the defendant shall be acquitted." Ch. 25, sec. 51. "At common law, the venue should always be laid in the county where the offense is committed, although the charge is in its nature transitory, as seditions, words, or battery; and it does not lie on the prisoner to disprove the commission of the offense in the county in which it is laid, but it is an essential ingredient in the evidence on the part of the prosecutor, to prove that it was committed within it." 1 Chitty on Criminal Law, 177. The substance of this summary has been referred to in a number of our decisions. *S. v. Lytle,* 117 N. C., 799; *S. v. Carter,* 126 N. C., 1011; *S. v. Oliver,* 186 N. C., 329.

The orderly sequence of these propositions is the question whether this principle of the common law prevails in the courts of this State. Before the adoption of our Constitution it was declared that all such parts of the common law as were theretofore in use within the State and were not destructive of, repugnant to, or inconsistent with the freedom and independence of the State and its form of government and not otherwise provided for, abrogated, repealed, or become obsolete, were in full force within the State. This statute is now in effect. C. S., 970. It is generally conceded that so much of the common law as is in force by virtue of this provision is subject to legislative control and may therefore be modified or repealed. But there are parts of the common law which are not subject to modification or repeal by the Legislature because they are inbedded in the Constitution.

The exercise of such control as it affects an indictment found by the grand jury of a county in which the offense was not committed is exemplified in the North Carolina Criminal Code of 1931, sections 4600 and 4606(b). The former confers upon the Superior Court of any county which adjoins the county in which the crime of lynching shall be committed jurisdiction over the crime and over the offender to the same

extent as if the crime had been committed in the bounds of the adjoining county. This statute, enacted in 1893, was declared constitutional in *S. v. Lewis*, 142 N. C., 626. The latter section provides that when a judge of the Superior Court shall remove an indictment from one county to another under section 4606(a), if the indictment is defective the grand jury of the county to which the removal is made shall have jurisdiction to find another bill for the same offense. These are the only statutes which in express terms give the grand_jury jurisdiction to find a bill outside the county in which the offense was committed.

There is another statute which provides that in the prosecution of all offenses it shall be taken as true that the offense was committed in the county in which by the indictment it is alleged to have taken place unless the defendant shall make denial by a plea in abatement setting forth the proper county. If upon issue joined the matter is found for the defendant he must be held to answer the offense in the county which he avers is the proper venue. The statute suggests its necessity "because the boundaries of many counties are either undetermined or unknown, by reason whereof high offenses go unpunished." In *S. v. Mitchell*, 83 N. C., 674, it is said in reference to this act: "The mischief intended to be remedied by it was the difficulty encountered by the courts in effecting the conviction of persons who had violated the criminal law of the State where the offense was committed near the boundaries of counties which were undetermined or unknown. And it often happened that, where the boundaries were established and known, it was uncertain from the proof whether the offense was committed on the one or the other side of the line, and, in consequence of the uncertainty and the doubt arising from it, offenders went 'unwhipt of justice.' This was the evil intended to be remedied. It had reference to the violation of the laws of this State committed near the boundaries of counties."

When there is substantial ground to doubt whether a statute was meant to apply to particular facts the intention of the Legislature may generally be determined from a consideration of the purpose for which the act was passed. Black on Interpretation of Laws, sec. 33. It is held, also, that as a rule statutes are to be construed with reference to the common law in existence at the time of their enactment. *Kearney v. Vann*, 154 N. C., 311.

Section 4606 was evidently intended to provide relief in difficulties originating in doubt entertained in good faith as to the county in which the offense was committed, and should not be construed to modify the common law beyond the reasonable scope of its manifest purpose.

The facts pleaded in abatement challenged the jurisdiction of the Superior Court of Buncombe County for the reason that the grand jury

there was without jurisdiction to indict the defendants for a breach of the criminal law averred to have been committed in the county of Wake. At common law the grand jury of the county in which the bill was found had no jurisdiction of the indictment, and we have no statute enacted by the General Assembly except as heretofore noted, "no act of parliament," conferring such jurisdiction. Whether such a statute, if enacted, would be sustained as an exercise of legislative power or declared invalid because in conflict with the organic law is a matter outside the scope of this discussion.

There was no error in sustaining the plea in abatement. The effect of the judgment is to terminate any further action or prosecution on the indictment found in Buncombe County and to discharge the defendants. *S. v. Carter, supra; S. v. Oliver, supra.*

It is not necessary to consider the demurrer. The judgment sustaining the plea, declaring the indictment void, and discharging the defendants is

Affirmed.