STATE OF NORTH CAROLINA v. EARL WAYNE FLOWERS (83CRS564, 83CRS565) AND JOHNNY PERRY WAUGH (84CRS148, 84CRS149)

No. 14A85

(Filed 29 August 1986)

**1. Indictment and Warrant § 3— no jurisdiction of grand jury—judgment arrested**

Judgment is arrested on defendants' convictions for rape because the Yadkin County Grand Jury which returned the indictments did not have jurisdiction to do so, since evidence at trial tended to show the rapes occurred

---

State v. Flowers

in Alexander County; the State produced no evidence that defendants committed these crimes in Yadkin County; the statement in the bill of indictment which alleged that the rapes occurred in Yadkin County was not *prima facie* evidence showing that the rapes occurred there; and N.C.G.S. § 15A-136 provides only for venue of sexual offenses and does not expand the power of grand juries to permit them to return indictments for criminal activity outside their territorial boundaries.

2. **Criminal Law § 66.18— in-court identification of defendant—failure to conduct voir dire—error**

    In a prosecution of defendant for first degree kidnapping, the trial court erred in denying defendant's motion for a *voir dire* of the prosecuting witness to determine the admissibility of her in-court identification of him, since the prosecuting witness, on *voir dire* concerning another matter, testified that she identified defendant as one of her assailants because she heard him admit during the other defendant's continuance hearing that he had engaged in sexual relations with her; she elaborated that she did not identify defendant because she recognized his voice but because he admitted having sexual relations with her on the night she was raped; the prosecuting witness thus revealed that she never really recognized defendant at all; and the jury could have concluded as well as the witness and without her opinion that defendant's statement implicated him in the crime.

3. **Criminal Law § 75.5— incriminatory statement under oath—warning against self-incrimination not required**

    In a prosecution for first degree rape and first degree kidnapping, defendant's testimony, given at a codefendant's hearing on a motion to continue, that he engaged in consensual sexual relations with the prosecuting witness on the date of the alleged crimes was not given under such coercive circumstances that defendant's constitutional rights were infringed when he was not warned of his right not to incriminate himself.

4. **Kidnapping § 1.2— first degree kidnapping—sufficiency of evidence**

    Evidence was sufficient to be submitted to the jury in a prosecution for first degree kidnapping where it tended to show that, while the prosecuting witness was walking home one evening, a car driven by a man the prosecuting witness did not know but later identified as being one defendant passed; the car slowed, turned down a side street and circled behind her; the car stopped at a stop sign and when it did not proceed into the intersection, she turned and saw a man running up behind her; she screamed; he put his hands around her neck and ordered her to stop screaming or he would kill her; and the man ordered her into the car with defendant who drove out of town.

5. **Criminal Law § 66.17— pretrial identification of defendant suggestive—in-court identification of independent origin**

    Though a prosecuting witness's pretrial showup identification of defendant was unnecessarily suggestive, it was nevertheless reliable and was properly admitted into evidence where, during the seven hours the witness was held captive in the confines of defendant's car, she had ample opportunity to observe the unmasked face of her assailant; she gave an accurate description

of him before the showup; her showup identification was unequivocal and made without the slightest hesitation; her reliability was further and convincingly demonstrated by her refusal to implicate a codefendant in a similar showup because she "didn't feel comfortable saying yes or no" and she would "rather say no than put an innocent man through something like this"; and she made the identification less than a week after the incidents.

**6. Criminal Law § 99.2 — court's summary of prosecuting witness's testimony — no expression of opinion**

The trial court did not express an opinion that the State had proven a number of facts where he gave a short summary of what the prosecuting witness contended; he admonished the jury to rely on their memory of her testimony, not his; and the purpose of his summary was to facilitate the orderly procession of the trial which at the time of his remarks had been interrupted repeatedly by the jury's being asked to leave the courtroom.

**7. Criminal Law § 119 — presumption of innocence — requested instruction not given**

There was no merit to defendant's contention that the trial judge committed reversible error by failing to instruct the jury, as defendant requested, that the presumption of innocence alone was sufficient to support a verdict of not guilty.

Justice MITCHELL concurring.

Justice MEYER joins in this concurring opinion.

APPEAL by defendants under N.C.G.S. § 7A-27(a) from judgments imposing life sentences entered by *Rousseau, J.,* presiding at the 29 October 1984 Criminal Session of YADKIN County Superior Court where defendants were convicted of first degree rape and first degree kidnapping. Defendants' petitions to bypass the Court of Appeals to appeal judgments imposing sentences for a term less than life were allowed.

*Lacy H. Thornburg, Attorney General, by Robert A. Mellott, Special Deputy Attorney General, for the state.*

*John E. Hall for Earl Wayne Flowers, defendant appellant.*

*Dennis R. Joyce for Johnny Perry Waugh, defendant appellant.*

EXUM, Justice.

The questions presented by this appeal are whether the trial court erred in: (1) refusing to dismiss rape charges against both defendants on the ground that the Yadkin County Grand Jury

had no jurisdiction to indict for rape; (2) admitting the prosecuting witness's in-court identification of Waugh; (3) admitting self-incriminating testimony given by Waugh at a prior continuance hearing for Flowers; (4) refusing to dismiss kidnapping charges against Flowers on the ground of insufficiency of evidence, and (5) admitting certain evidence and instructing the jury. We hold that the state produced insufficient evidence that the Yadkin County Grand Jury had jurisdiction to indict for rape and arrest judgment on both defendants' convictions for first degree rape. Concluding that the trial court erred in admitting the prosecuting witness's in-court identification of Waugh, we grant Waugh a new trial on the charge of first degree kidnapping. We find no reversible error in Flowers' trial on the charge of first degree kidnapping.

I.

The prosecuting witness testified as follows: She was walking home in Booneville just past dark on 2 February 1983 when defendant Johnny Perry Waugh forced her into a car driven by defendant Earl Wayne Flowers. She knew neither defendant at that time. Her captors drove her to Winston-Salem, then towards Wilkesboro. After driving for an extended period, they stopped the car on a sandy road. Waugh left the car and Flowers forced her to have intercourse. Then Flowers left the car and Waugh did the same. She did not know where she was when these incidents occurred. Flowers returned and the two defendants interrogated her about herself and her family. Defendants then drove her to Elkin, after stopping in Hiddenite to wash the car, and put her out of the car. She flagged a police car and was taken to the hospital.

In addition, the state produced the following evidence: The prosecuting witness furnished the authorities with a description of her assailants and the car they were driving. Law enforcement officials located a car matching the description given by the prosecuting witness being driven by defendant Flowers. They told Flowers he was suspected of rape and asked if he would agree for the prosecuting witness to look at him. Flowers agreed. The prosecuting witness was driven to Flowers' home, and she identified him as one of her assailants. Flowers was arrested and charged with first degree kidnapping and first degree rape.

On 9 February 1983 law enforcement officials told the prosecuting witness they had another suspect they would like her to see. She was driven to the Wilkes County Sheriff's Department and surveyed defendant Waugh. She stated that although it may be the "biggest mistake" of her life, she could not say truthfully that Waugh was the other assailant.

The state proceeded with its prosecution against Flowers but not Waugh. The prosecuting attorney agreed with Flowers' attorney to continue the state's case against Flowers if Flowers' attorney produced, as he said he could, a man who would testify he was with Flowers and engaged in consensual sexual relations with the prosecuting witness on 2 February 1983. Flowers' attorney produced Waugh who testified under oath as Flowers' attorney promised he would. The prosecuting attorney was present at that hearing and heard Waugh's admissions.

After Flowers' continuance hearing, Waugh accompanied law enforcement agents to various places around Taylorsville where he said he had consensual sexual relations with the prosecuting witness on 2 February 1983. Waugh then was arrested and charged with first degree kidnapping and first degree rape.

Neither defendant put on any evidence.

We first consider an assignment of error common to both defendants. Next we consider assignments of error advanced by defendant Waugh alone. We conclude by considering defendant Flowers' assignments of error.

II.

[1] Defendants request this Court to arrest judgment on their convictions for rape because the Yadkin County Grand Jury which returned the indictments did not have jurisdiction to do so. The prosecuting witness testified that after she was abducted in Booneville (Yadkin County), Flowers drove towards Winston-Salem (Forsyth County). The car stopped at a Food Town store, and Waugh began driving. The prosecuting witness next recognized they were traveling on U.S. Highway 421, and she saw road signs which said Wilkesboro (Wilkes County). She asked her abductors where they were taking her; Flowers said to see his mother in Hickory (Catawba County). They continued driving and at one point the prosecuting witness recognized road markers

which said 18 and 90. North Carolina Highways 18 and 90 intersect at Taylorsville (Alexander County). After some time, the prosecuting witness said, "Your mother sure lives far away. . . ." Flowers remarked, "We done went by mama's." The car then whipped around in the middle of the road and turned onto a sandy road where the rapes occurred. The prosecuting witness did not know where she was at the time. Later, she searched for the sandy road with the aid of the authorities, but she never found it. After the rapes occurred, defendants drove a short distance to a car wash which the prosecuting witness later identified as being in Hiddenite (Alexander County). After washing the car, they drove to Elkin (Surry County) and released her.

At common law a grand jury had jurisdictional power to indict only for crimes committed within the county in which it convened. *State v. Randolph*, 312 N.C. 198, 321 S.E. 2d 864 (1984); *State v. Mitchell*, 202 N.C. 439, 163 S.E. 581 (1932). The legislature has power to extend the grand jury's power beyond the territorial limitation imposed by the common law, but when this case was heard, it had not exercised that power. *See State v. Randolph*, 312 N.C. 198, 321 S.E. 2d 864. Thus, the common law rule governed in this state at that time. *Id.*[1] A challenge to the jurisdiction of the grand jury may be raised at any time before, during or after trial. *State v. Randolph*, 312 N.C. 198, 208, 321 S.E. 2d 864, 871; N.C.G.S. § 15A-952(d). The state has the burden of proving that the offense charged in the indictment occurred in the county named in the indictment. *State v. Batdorf*, 293 N.C. 486, 238 S.E. 2d 497 (1977); *State v. Miller*, 288 N.C. 582, 220 S.E. 2d 326 (1975).

In this case the evidence adduced at trial tends to show the rapes occurred in Alexander County. The state produced no evidence that defendants committed these crimes in Yadkin County, the county in which the grand jury which returned the indictments convened.

---

1. Apparently in response to *Randolph*, the legislature enacted N.C.G.S. § 15A-631 which provides that "the place for returning a presentment or indictment is a matter of venue and not jurisdiction." *See State v. Paige*, 316 N.C. 630, 343 S.E. 2d 848 (1986). N.C.G.S. § 15A-631 became effective 1 July 1985, *see id.*, and does not apply to the indictments in this case which were returned in April 1983 and January 1984.

The state contends that the statement in the bill of indictment which alleges that the rapes occurred in Yadkin County is prima facie evidence showing that the rapes occurred there. The state relies upon language from *State v. Randolph*, 312 N.C. 198, 321 S.E. 2d 864:

> The statement of the county where the offense took place established *prima facie* jurisdiction of the grand jury to return the indictment. Former N.C.G.S. 15-134 did not change this. It merely limited a defendant's means of attacking the indictment on the ground that the offense occurred in a county other than that named in the indictment. Current N.C.G.S. 15A-135, however, only limits a defendant's means of attacking *venue*. Since the statement in an indictment of the county where the crime allegedly occurred establishes *prima facie jurisdiction*, a challenge to this statement can be asserted at any time as stated in N.C.G.S. 15A-952(d).

*Id.* at 208, 321 S.E. 2d at 871.

The state misconstrues the import of our language. *Randolph* simply means that if a grand jury states in the indictment that an offense occurred in its county, the state is authorized to act upon the indictment against the accused, if the accused does not object, without any further showing in the pretrial stage of the case. When jurisdiction is challenged, however, the state must produce sufficient evidence to prove that the crime was committed in the county where the grand jury which returned the indictment convened. Thus, the statement in the bill of indictment was not evidence that the rapes occurred in Yadkin County.

The state next argues that even if the record contains no evidence that the rapes occurred in Yadkin County, the common law limitation on the grand jury's jurisdiction does not apply to this case. The state contends that N.C.G.S. § 15A-136 confers jurisdiction in sexual offense cases on the grand jury in "the county where transportation was . . . begun." The statute provides:

§ 15A-136. Venue for sexual offenses.

If a person is transported by any means, with the intent to violate any of the provisions of Article 7A of Chapter 14 (§ 14-27.1 et seq.) of the General Statutes and the intent is followed by actual violation thereof, the defendant may be

tried in the county where transportation was offered, so-licited, begun, continued or ended.

N.C.G.S. § 15A-136.

The statute addresses a matter of venue, *i.e.*, the location of the tribunal where a defendant may be compelled to stand trial. Venue becomes an issue, however, only after a grand jury has determined that probable cause to go forward with criminal proceedings against an accused exists. No provisions of the statute expands the power of grand juries to permit them to return indictments for criminal activity outside their territorial boundaries. Any doubt about the effect of the statute is resolved by the title given it by the legislature: "Venue for sexual offenses." 1986 N.C. Sess. Laws ch. 682, § 2.

Because the Yadkin County Grand Jury had no jurisdiction to indict defendants for these rapes, we arrest judgment in the rape cases against defendants. The legal effect of arresting judgment is that the verdicts of guilt and the sentences of life imprisonment are vacated. If the state chooses, it may proceed against the defendants for those offenses upon proper bills of indictment returned by the grand jury in the county where the offenses occurred.

## III.

This section is devoted to assignments of error advanced by defendant Waugh.

## A.

[2]   Defendant Waugh assigns error to the trial court's denial of his motion for a voir dire of the prosecuting witness to determine the admissibility of her in-court identification of him.

In spite of Waugh's objection and request for a voir dire, the prosecuting witness was allowed to testify that Waugh was one of two men who kidnapped and raped her. A voir dire concerning the prosecuting witness's identification of Flowers and a show-up identification procedure as to Waugh was conducted. During this voir dire the prosecuting witness explained why she had earlier said Waugh was one of her assailants. She testified she heard Waugh admit in Flowers' continuance hearing that he engaged in sexual relations with her. The prosecuting witness elaborated

that she was not identifying Waugh because she recognized his voice but because he admitted having sexual relations with her on the night she was raped. The trial court did not instruct the jury to disregard the prosecuting witness's identification of Waugh or declare a mistrial because of it, though Waugh requested the trial court to do both.

Before admitting challenged in-court identification testimony, the trial court should conduct a voir dire, find facts, and determine the admissibility of the testimony. Failure to conduct a voir dire will be deemed harmless where the evidence is clear and convincing that the witness's in-court identification of defendant originated with the witness's observation of defendant at the time of the crime and not from an impermissibly suggestive pretrial identification procedure. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Stepney*, 280 N.C. 306, 185 S.E. 2d 844 (1971).

In this case, the evidence is clear that the witness's in-court identification did *not* so originate. The prosecuting witness's testimony on a voir dire conducted after she had identified Waugh in court revealed she never really recognized Waugh at all. She *concluded* he was one of her attackers because of what he admitted and not by any other identifying characteristic. The jury could have concluded as well as she and without her opinion that defendant's statement implicated him in the crime. While the prosecuting witness's statement did not help the jury understand the identity of the second of her assailants, defendant was unfairly prejudiced by the prosecuting witness's being permitted, improperly, to identify him before the jury. Her in-court identification permitted the jury wrongfully to believe she recognized Waugh from independent recollection. Had the trial court allowed Waugh's motion for a voir dire, the prosecuting witness would not have been permitted to identify before the jury Waugh as one of her assailants. Because it did not and because it did not strike the prosecuting witness's testimony after learning of its unreliability, Waugh must receive a new trial on the first degree kidnapping charge.

B.

[3] Although defendant Waugh must receive a new trial on the charge of first degree kidnapping, we address two related assign-

ments of error he raised which relate to matters which likely will recur at the new trial. Waugh complains that the trial court's admission of testimony he gave at Flowers' continuance hearing, placing him in the company of the prosecuting witness on the evening of 2 February 1983, contravened his privilege against self-incrimination guaranteed by the Fifth Amendment of the United States Constitution and Article I, section 23 of the state constitution.

In response to an inquiry by Flowers' attorney, the prosecuting attorney agreed to continue the state's case against Flowers if his attorney would produce a man who would say under oath he was with Flowers and engaged in consensual sexual relations with the prosecuting witness on 2 February 1983. Though not represented by counsel or informed of his right against compulsory self-incrimination, Waugh testified in this manner. Waugh contends the judge at Flowers' continuance hearing should have informed him he had a right not to testify. Because the judge did not, he says his statements were not properly admissible against him in the trial below. We disagree.

The privilege asserted by defendant does not protect against self-incrimination but against *compelled* self-incrimination. The principle of *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966), is instructive by analogy. *Miranda* warnings are necessary in the context of custodial interrogation where there are present "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda v. Arizona*, 384 U.S. at 467, 16 L.Ed. 2d at 719. Not every exchange between law enforcement officials and citizens, however, requires that a person be warned of his rights, but only those to which the element of coercion attaches. *See Oregon v. Matheason*, 429 U.S. 492, 50 L.Ed. 2d 714 (1977); *State v. Martin*, 294 N.C. 702, 242 S.E. 2d 762 (1978).

In this case we do not believe Waugh's incriminating testimony at Flowers' hearing was given under such coercive circumstances that his constitutional rights were infringed when he was not warned of his right not to incriminate himself. Though Flowers' attorney was acting with the full complicity of the state, defendant came to the hearing of his own volition and left after-

wards freely. Though he perhaps did not exercise sound judgment in testifying, he did exercise his own judgment. We cannot say defendant was compelled to speak to his detriment. Defendant's assignment of error is overruled.

Waugh also assigns error to the trial court's admission of statements made to law enforcement officials in the wake of his statements at Flowers' continuance hearing on the ground they were tainted by the defect in the first statement. Our conclusion above renders this assignment of error moot.

IV.

The remaining discussion is directed to assignments of error advanced only by defendant Flowers in connection with the conduct of the trial on the kidnapping charge.

A.

[4] Flowers contends the trial court erred in failing to grant his motion to dismiss the charge of kidnapping because the state produced insufficient evidence to prove that he participated in the kidnapping of the prosecuting witness or if he did that she was taken against her will.

The positions taken by defendant—that he didn't do it but if he did she consented—tend to belie the merit of defendant's assignment of error. Evidence produced by the state tends to show that while the prosecuting witness was walking home on 2 February 1983 in Booneville, a car driven by a man the prosecuting witness did not know but later identified as being defendant Flowers passed. The car slowed, turned down a side street and circled behind her. The car stopped at a stop sign and when it did not proceed into the intersection, she turned and saw a man running up behind her. She screamed. He put his hands around her neck and ordered her to stop screaming or he would kill her. The man ordered her into the car with Flowers who drove out of town.

Where two defendants act in concert, both are guilty of the crime. *State v. Joyner*, 297 N.C. 349, 255 S.E. 2d 390 (1979). It is not necessary for a defendant to do any particular act constituting part of the crime under the principle of concerted action so long as he is present at the scene of the crime and the evi-

dence is sufficient to show he is acting with another who does the acts which constitute the crime pursuant to a common plan or purpose. *Id.*

Construing the evidence given above in the light most favorable to the state, as we must, we conclude that a jury readily could have concluded beyond reasonable doubt that: (1) defendant Flowers acted in concert in the abduction of the prosecuting witness and (2) that she was abducted against her will. We therefore overrule this assignment of error by Flowers.

B.

[5] Flowers next contends the trial court erred in admitting evidence relating to the prosecuting witness's pretrial identification of him. Flowers does not except to her in-court identification.

The prosecuting witness gave police a description of the men she said raped her and their car. She described Flowers as a black male in his mid-twenties, about 5 feet 4 inches tall and weighing about 150 pounds. She noted two identifying features about the car: it had an abnormally small steering wheel and feathers hanging from the rear view mirror. Five days later police located a car fitting that description being driven by Flowers. The police told Flowers the car fit the description of a car they were looking for in connection with a rape and kidnapping and asked Flowers if he would allow the victim to come to his home and look at him. Flowers agreed. When the prosecuting witness arrived she immediately exclaimed: "He is the one that raped me." Flowers protested she was mistaken, and the prosecuting witness looked at Flowers a second time. This time she said, "You know it's you." Flowers contends the pretrial identification procedure was so impermissibly suggestive that it violated his due process rights guaranteed by the United States and North Carolina Constitutions.

We assume that the pretrial identification was suggestive and unnecessarily so.

Both the United States Supreme Court and this Court have criticized the 'practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup. . . .' *Stovall v. Denno, supra,* 388 U.S. at 302, [18 L.Ed. 2d 1199, 1206 (1967)]; *State v. Matthews,* 295 N.C. 265,

245 S.E. 2d 727 (1978), *cert. denied,* 439 U.S. 1128 (1979); *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974), *death sentence vacated,* 428 U.S. 902 (1976). This Court has recognized that such a procedure, sometimes referred to as a 'showup,' may be 'inherently suggestive' because the witness 'would likely assume that the police had brought [him] to view persons whom they suspected might be the guilty parties.' *State v. Matthews, supra,* 295 N.C. at 385-86, 245 S.E. 2d at 739.

*State v. Oliver,* 302 N.C. 28, 44-45, 274 S.E. 2d 183, 194 (1980); *accord State v. Turner,* 305 N.C. 356, 289 S.E. 2d 368 (1982).

Pretrial showup identifications, though they are suggestive and unnecessary, are not, however, *per se* violative of a defendant's due process rights. *Manson v. Brathwaite,* 432 U.S. 98, 53 L.Ed. 2d 140 (1977). The primary evil to be avoided is the substantial likelihood of misidentification. *Neil v. Biggers,* 409 U.S. at 198, 34 L.Ed. 2d at 410. *See also State v. Oliver,* 302 N.C. at 45, 274 S.E. 2d at 194. Whether there is a substantial likelihood of misidentification depends on the totality of the circumstances.

The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*State v. Turner,* 305 N.C. at 364, 289 S.E. 2d at 373-74 (*quoting Manson v. Brathwaite,* 432 U.S. at 114, 53 L.Ed. 2d at 154). If under the totality of the circumstances there is no substantial likelihood of misidentification, then evidence of pretrial identification derived from unnecessarily suggestive pretrial procedures may be admitted. *State v. Turner,* 305 N.C. 356, 289 S.E. 2d 368; *State v. Oliver,* 302 N.C. 28, 45, 289 S.E. 2d 183, 194.

Despite our continued disfavor towards the practice of unnecessary showups, considering the totality of the circumstances, we conclude that the prosecuting witness's identification of Flowers was reliable and her pretrial identification was properly admitted into evidence. During the seven hours the prosecuting

witness was held captive in the confines of Flowers' car, she had ample opportunity to observe the unmasked face of her assailant. She gave an accurate description of him before the showup. Her showup identification was unequivocal and made without the slightest hesitation. Her reliability was further and convincingly demonstrated by her refusal to implicate defendant Waugh in a similar showup because she "didn't feel comfortable saying yes or no" and she would "rather say no than put an innocent man through something like this." Finally, the prosecuting witness made the identification less than a week after the incidents. The testimony regarding the prosecuting witness's pretrial identification of defendant Flowers, therefore, was properly admitted.

C.

[6] Defendant complains further that the trial judge improperly expressed to the jury in the following statement his opinion that the state had proven a number of facts:

> COURT: Now, Members of the Jury, you've been in and out of the courtroom a whole lot this morning. Of course you know we started out with this young lady testifying as to what took place on the evening of February the 2nd, 1983. You recall what she contends took place on that night. Where she was taken. That she was out in Elkin. That she was then taken to the hospital. You remember all the facts she's testified about, or what she contends the facts were. . . . Now, that's just to fill you back in to where we were, to where we are now with this witness. Now, of course, you take your own recollection of the facts, not what I might have said about it. All right. Let's continue.

Defendant's argument is feckless. The trial judge was attempting to facilitate the orderly procession of the trial which at the time he made these statements.had been interrupted repeatedly by the jury's being asked to leave the courtroom. He qualified his remarks by saying what the prosecuting witness "contends" and admonished the jury to rely on their memory of her testimony, not his.

D.

Defendant Flowers also argues that the trial court committed reversible error by allowing a witness to testify that defendant's

wife was a white female. We disagree. The prosecuting witness already had testified without objection that defendant Flowers told her his wife was Caucasian. Her testimony blunted the impact of any unfair racial prejudice the statement may have engendered in the minds of the jury.

[7]   In his final two assignments of error, defendant Flowers objects to the trial court's jury instructions. He argues first that the trial judge committed reversible error by failing to instruct the jury, as defendant requested, that the presumption of innocence alone is sufficient to support a verdict of not guilty.

We disagree. The trial judge instructed the jury as follows:

The fact that the Defendant has been charged by some law enforcement officer is no evidence of their [sic] guilt. Under our system of justice, when a Defendant pleads not guilty, he is not required to prove his innocence. He is presumed to be innocent. The State of North Carolina must prove to you that the Defendant is guilty beyond a reasonable doubt and on each case.

The instruction requested by Flowers would have needlessly confused the instruction given by Judge Rousseau. To the extent the requested instruction implies that a jury may elect to return a verdict of not guilty though they are persuaded beyond reasonable doubt that the state has proven the crime charged, the instruction does not accord with the law of the state. To the extent that it means the burden of proof is upon the state alone, Judge Rousseau so instructed the jury.

Flowers argues, finally, that the instructions amounted to an impermissible expression of opinion. After instructing the jury about the elements of kidnapping, the trial judge asked, "Any questions about the kidnapping?" Defendant contends the court's instruction was tantamount to an opinion that the state had proven a kidnapping occurred.

Defendant's objection has no merit. The court's statements were simply a shorthand method of referring to the elements of kidnapping about which he had just instructed. Flowers received a fair trial on the charge of first degree kidnapping.

## Conclusion

For the reasons stated above: judgment against both defendants for first degree rape is arrested; defendant Waugh must receive a new trial on the charge of first degree kidnapping; defendant Flowers received a fair trial free of reversible error on the charge of first degree kidnapping.

As to Flowers:
> Case No. 83CRS564—Judgment arrested;
> Case No. 83CRS565—No error.

As to Waugh:
> Case No. 84CRS148—Judgment arrested;
> Case No. 84CRS149—New trial.

Justice MITCHELL concurring.

I concur. I write separately only to emphasize that in Part III. B. of its opinion the majority quite properly relies upon *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966) *only* "by analogy." *Miranda* does not control with regard to the question of the admissibility, in this joint trial of the defendants, of Waugh's previous in court testimony during Flowers' continuance hearing. *Miranda* dealt with coercive in custody interrogation of a defendant by law enforcement officers. It does not control in situations such as this where the defendant's statement to be entered into evidence was made under oath in court and while the defendant was protected from all improper coercion by a judicial officer.

Justice MEYER joins in this concurring opinion.