STATE OF NORTH CAROLINA v. ROBERT AMOS FARMER

No. COA05-1406

(Filed 6 June 2006)

**1. Appeal and Error— preservation of issues—motion to dismiss—not renewed at end of evidence—waiver**

Failure to renew a motion to dismiss at the end of all the evidence resulted in waiver of the right to challenge the sufficiency of the evidence on appeal.

**2. Evidence— attempted bribe by defendant—door opened by defendant**

An assault victim's testimony that defendant tried to bribe him was properly admitted. Defendant opened the door on cross-examination by asking the victim about conversations with defendant; the State was entitled to chase the rabbit released by defendant.

**3. Evidence— identification of defendant—in-court identification not tainted by single photo show-up**

There was no plain error in an in-court identification of defendant where the witness had made a out-of-court identification based on a single photograph. Her identification of defendant before being shown the photograph was sufficiently reliable.

Appeal by defendant from judgment entered 3 June 2005 by Judge Nathaniel J. Poovey in Catawba County Superior Court. Heard in the Court of Appeals 18 May 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Harriet F. Worley, for the State.*

*William D. Auman, for defendant-appellant.*

TYSON, Judge.

Robert Amos Farmer ("defendant") appeals from judgment entered after a jury found him to be guilty of felonious assault with a deadly weapon with intent to kill and discharging a weapon into occupied property. We find no error.

## I. Background

### A. State's Evidence

Shananda Crockett ("Crockett") testified she and Demarcus Powell ("Powell") went to a convenience store to buy gasoline just before midnight on 8 October 2004. After Powell entered the store, Crockett observed defendant standing outside the store talking with a woman and standing next to a small tan pickup truck. Powell exited the store and began talking with defendant. Powell asked defendant "about· something that had happened about his girlfriend getting tied up and him getting robbed." Defendant denied he was involved.

Powell testified he had a conversation with defendant outside of the convenience store, and defendant identified himself by name. Following the conversation, Powell drove his vehicle out of the parking lot. Crockett sat in the front passenger seat of Powell's vehicle. Powell stopped his vehicle at a stoplight immediately after he turned left out of the convenience store's parking lot. Powell intended to make a right turn to go to his aunt's home.

Crockett and Powell testified defendant drove a tan pickup truck along beside the driver's side of Powell's vehicle and fired shots into Powell's vehicle. One of the bullets struck Powell in the back of his neck. The gunshots also shattered the rear driver's side window of Powell's vehicle and left a bullet hole in the driver's headrest. Crockett testified that after she heard the gunshot, she moved into the floorboard of the vehicle, but later sat back in the passenger's seat and saw defendant put the gun down and drive away from the scene.

Powell drove his vehicle into a nearby parking lot. Crockett drove Powell to a hospital to seek medical assistance. Later that evening, Crockett and Powell spoke with law enforcement officials about the shooting. Crockett described the assailant as a "short white male, heavyset, and they knew him as Rob." Powell told the officer the man who shot him was a man named, "Rob," who was a short, chubby, white male.

Crockett testified she knew defendant's name because one of her friends went to school with him and had told her his name. She also testified that approximately one week before the shooting she and one of her friends had observed defendant at the convenience store "standing outside in the parking lot with guns."

Crockett told a police officer, whom she knew, that defendant was the person who had shot into Powell's car. Crockett also told police offi-

cers she thought she knew where defendant lived. Crockett had driven by a house and saw defendant playing with some children. She provided police officers general directions to defendant's home where he lived with his girlfriend and his children.

Lieutenant Dale Lafone ("Lieutenant Lafone") testified Crockett described the assailant and the assault. Lieutenant Lafone stated, "with the address confirmed by Officer Cox at 330 South Cline Avenue, I felt I knew the Rob she was talking about, the Rob being Robert Farmer, that lived, that stayed at that address on Cline Avenue." Lieutenant Lafone showed Crockett a photograph of defendant. Crockett identified defendant as the assailant. Powell also reviewed the photograph and identified defendant as the assailant.

On cross-examination and re-direct, Powell testified defendant contacted him in December 2004 and asked him if there were "some things that could be done about him shooting." Defendant told Powell that he would talk to him later. Powell contacted defendant a few days later and was asked by defendant how much money it would take for Powell not to testify. Powell gave defendant the figure of $15,000.00. Defendant responded he was uncertain whether he could provide Powell with that amount of money. Powell never heard from defendant again.

### B. Defendant's Evidence

Defendant's mother, Lisa Ellison ("Ellison"), testified that on 8 October 2004, the day of the shooting, she went to a house located at 330 Cline Street and met with her son. Ellison drove defendant to the Lake Norman Motel and the Landing Restaurant and rented him a room for the night so he could spend time with friends. Ellison left defendant at the hotel without a vehicle.

John Paul Genaro ("Genaro") testified his family owns and he was employed at the Lake Norman Motel and the Landing Restaurant. Genaro stated defendant spent the evening of 8 October 2004 playing pool in the back of the restaurant. Genaro observed defendant go to his room at approximately 1:00 a.m., and also observed Bucky Bolden ("Bolden"), one of the restaurant's cooks, enter defendant's room.

Bolden testified he is one of defendant's friends and works at the Lake Norman Motel and the Landing Restaurant as a cook. After Bolden finished cleaning the kitchen, he and defendant went to defendant's motel room. Bolden stayed with defendant for approximately two hours before going home.

Defendant was convicted of felonious assault with a deadly weapon with intent to kill and discharging a weapon into occupied property. Defendant received an active sentence within the presumptive range of not less than thirty-four and no more than fifty months imprisonment. Defendant appeals.

## II. Issues

Defendant argues the trial court erred by: (1) failing to dismiss the charges against him due to insufficiency of the evidence; (2) allowing Powell to testify that defendant offered to bribe him; and (3) allowing Crockett to make an in-court identification of him as the assailant.

## III. Sufficiency of the Evidence

[1] Defendant argues the trial court should have dismissed the charges due to insufficiency of the evidence. Defendant's assignment of error references only his motion to dismiss at the close of the State's evidence. Defendant presented evidence through testimony by his mother and two friends. Defendant failed to renew his motion to dismiss at the end of all the evidence and waived his right to challenge the sufficiency of the evidence on appeal.

N.C. R. App. P. 10(b)(3) (2006) provides,

[i]f a defendant makes such a motion after the State has presented all its evidence and has rested its case and that motion is denied and the defendant then introduces evidence, his motion for dismissal or judgment in case of nonsuit made at the close of State's evidence is waived. Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal.

This assignment of error is dismissed.

## IV. Powell's Testimony

[2] Defendant argues the trial court should not have allowed Powell to testify that defendant offered to bribe him.

N.C. Gen. Stat. § 15A-903, as amended in 2004, provides the State, upon motion by a defendant, must make the State's complete files, including all witness statements, available to the defendant. N.C. Gen. Stat. § 15A-903 (2005).

N.C. Gen. Stat. § 15A-910 (2005) provides:

(a) If at any time during the course of the proceedings the court determines that a party has failed to comply with this Article or with

an order issued pursuant to this Article, the court in addition to exercising its contempt powers may

    (1) Order the party to permit the discovery or inspection, or

    (2) Grant a continuance or recess, or

    (3) Prohibit the party from introducing evidence not disclosed, or

        (3a) Declare a mistrial, or

        (3b) Dismiss the charge, with or without prejudice, or

    (4) Enter other appropriate orders.

(b) Prior to finding any sanctions appropriate, the court shall consider both the materiality of the subject matter and the totality of the circumstances surrounding an alleged failure to comply with this Article or an order issued pursuant to this Article.

Defendant filed motions for discovery and for affirmation of discovery compliance. Defendant argues the State has both "a constitutional and statutory duty to disclose material evidence," and "[n]o one would dispute that [defendant's] alleged bribe was in fact material, particularly with this being an alibi defense case."

During cross-examination, defense counsel asked Powell if he had spoken with defendant after the alleged incident. Powell answered, "Yes." On re-direct, the State asked Powell about the substance of that conversation. Defendant objected, and the judge excused the jury.

A *voir dire* examination of Powell was conducted, including questions by the State, defense counsel, and the trial judge. Powell testified during *voir dire*, defendant had asked him not to testify against him and whether Powell could "forget everything that happened." Powell also testified he had not told the State about these conversations with defendant. The trial court overruled defendant's objection and allowed Powell to testify regarding the conversation. The trial court noted Crockett had made a similar allegation that defendant offered to pay her not to testify, and the State had promptly given defense counsel that information. The court concluded, "it would make no sense for [the District Attorney] to tell you about one and not tell you about the other if he's going to tell you about any."

In *State v. Godwin*, our Supreme Court held the trial court did not err when it admitted a witness's testimony that he had received a tele-

phone call from the defendant who confessed to the witness that he had murdered the victim. 336 N.C. 499, 507, 444 S.E.2d 206, 210 (1994). The defendant objected to the admission of the testimony under a previous version of N.C. Gen. Stat. § 15A-903. *Id.* at 506, 444 S.E.2d at 210. The State is required to make known to the defendant oral statements made by the defendant that the State intended to offer into evidence, which were known to the State prior to or during the course of trial. *Id.* The State argued, "the substance of this statement was consistent with other statements made by defendant provided in discovery," and the witness had not previously revealed this information to the State. *Id.*

The Court held:

The State cannot reasonably be expected to relate a statement to defendant which it has no knowledge of such as in the case at hand. Under these circumstances, we find that the State did not violate the discovery rules of N.C.G.S. § 15A-903(a); thus, the trial court did not err in allowing this testimony.

*Id.* at 507, 444 S.E.2d at 210.

In *State v. Taylor*, our Supreme Court stated:

A major purpose of the discovery procedures of Chapter 15A is to protect the defendant from unfair surprise. When the defendant does not inform the trial court of any potential unfair surprise, the defendant cannot properly contend that the trial court's failure to impose sanctions is an abuse of discretion.

332 N.C. 372, 384, 420 S.E.2d 414, 421 (1992) (internal quotations and citations omitted).

Although *Godwin* was decided prior to the 2004 amendment to N.C. Gen. Stat. § 15A-903, the amendment does not alter the applicability of the Court's reasoning to the issue before us. Powell testified he had never revealed the contents of his telephone conversation with defendant to the State. The State was unaware of this conversation but had provided defendant with a similar statement from Crockett alleging defendant's attempt to bribe her.

Defendant opened the door on cross-examination by asking Powell about later conversations between he and Powell. The State was entitled to chase the rabbit after defendant let it loose. Defendant knew the State had evidence that he had attempted to bribe Crockett and should not have been surprised when Powell testified defendant had attempted to bribe him. Defendant cannot now reasonably complain that Powell's

testimony amounted to "unfair surprise." *Id.* This assignment of error is overruled.

### V.  Identification of Defendant

**[3]** Defendant argues the trial court erred when it allowed Crockett to make an in-court identification of him. Defendant "asks this Court to review the trial court's failure to suppress Crockett's identification of defendant under a plain error standard because defendant withdrew his objection to the identification." Defense counsel filed a motion to suppress the challenged identification by Crockett, based on an unduly suggestive out-of-court identification procedure. When Crockett testified, defendant's objection to her identification was overruled, and defense counsel withdrew his motion.

Defendant concedes:

Plain error is applied cautiously and only in exceptional cases when after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings. Under this standard, a defendant is entitled to a new trial only if the error was so fundamental that, absent the error, the jury probably would have reached a different result.

*State v. Augustine*, 359 N.C. 709, 717, 616 S.E.2d 515, 523 (2005) (internal quotations and citations omitted).

Lieutenant Lafone showed defendant's photograph to Crockett while she was at the hospital with Powell. Lieutenant Lafone did not show Crockett any other photographs. Crockett identified defendant as the assailant and told Lieutenant Lafone his name was "Rob." Defendant argues, "given the circumstances, showing only one photo to a prospective witness would be overly suggestive." Defendant acknowledges, "the identification of [defendant] via the 'show up' must be excluded unless it is first determined by the trial court that the in-court identification has an independent origin of the invalid pretrial procedure."

Regarding pretrial identifications, our Supreme Court has stated:

STATE v. FARMER

[177 N.C. App. 710 (2006)]

Pretrial showup identifications, though they are suggestive and unnecessary, are not, however, *per se* violative of a defendant's due process rights. The primary evil to be avoided is the substantial likelihood of misidentification. Whether there is a substantial likelihood of misidentification depends on the totality of the circumstances.

The factors to be considered . . . include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

If under the totality of the circumstances there is no substantial likelihood of misidentification, then evidence of pretrial identification derived from unnecessarily suggestive pretrial procedures may be admitted.

*State v. Flowers*, 318 N.C. 208, 220, 347 S.E.2d 773, 781 (1986) (internal quotations and citations omitted).

The State argues, "Crockett's identification of defendant prior to being shown the picture was sufficiently reliable that admission of her identification of defendant at trial was not a fundamental error so prejudicial that justice cannot have been done." We agree.

Prior to seeing defendant's photograph, Crockett: (1) gave an accurate physical description of defendant as a short, white, heavyset male; (2) correctly identified defendant's first name; (3) gave an accurate description of defendant's residence, which was corroborated by defendant's mother; and (4) told police she "knew of" defendant and had seen him at the same convenience store in possession of guns one week prior to the shooting. Crockett was able "to view the criminal [before and] at the time of the crime" and testified she saw defendant lower the gun after Powell was shot and drive away from the scene. *Id.* Lieutenant Lafone showed Crockett the picture of defendant on the night of the shooting, while she was at the hospital with Powell. "[T]he time between the crime and the confrontation" was short. *Id.* Under plain error review, this assignment of error is overruled.

## VI. Conclusion

Defendant failed to preserve for appellate review his assignment of error regarding the sufficiency of the evidence by failing to renew his

motion to dismiss after offering evidence. N.C. R. App. P. Rule 10(b)(3). The trial court properly allowed Powell to testify that defendant allegedly bribed him and properly admitted Crockett's in-court identification of defendant.

Defendant received a fair trial, free from prejudicial errors he preserved, assigned, and argued. We find no error in the judgment and sentence imposed.

No error.

Judges McCULLOUGH and HUDSON concur.